UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LVDG SERIES 125, established under LVDG LLC, a Nevada series limited-liability company,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL HOME LOAN MORTGAGE CORPORATION, a federally chartered corporation; HAROLD M. WELLES, an individual; VALERIE M. WELLES, an individual; WELLS FARGO BANK, N.A., a national banking association; MTC FINANCIAL INC. d/b/a TRUSTEE CORPS, a California corporation; DOE individuals I through XX; and ROE CORPORATIONS I through XX,<br><br>Defendants. | Case No. 3:13-cv-00503-LRH-WGC<br><br>ORDER |
| WELLS FARGO BANK, N.A., a national association; FEDERAL HOME LOAN MORTGAGE CORPORATION,<br><br>Counter-Claimants,<br><br>v.<br><br>LVDG Series 125, established under LVDG LLC, a Nevada series limited-liability company,<br><br>Counter-Defendant. | |

1

Before the court is a motion for summary judgment filed by defendants and counter-claimants Wells Fargo Bank, N.A., ("Wells Fargo") and Federal Home Loan Mortgage Corporation ("Freddie Mac"), brought under the Federal Foreclosure Bar, 12 U.S.C. § 4617(j)(3). ECF No. 108. Plaintiff and counter-defendant, LVDG Series 125, established under LVDG LLC, ("LVDG") opposed the motion (ECF No. 109), to which Freddie Mac and Wells Fargo replied (ECF No. 112). Under the federal foreclosure bar and *Berezovsky v. Moniz*, Freddie Mac's interest in the at-issue property cannot be extinguished by a nonjudicial foreclosure without consent from the Federal Housing Finance Agency ("FHFA" or "the Agency"). 869 F.3d 923, 930-31 (9th Cir. 2017). Because no consent was given, the court grants in part Freddie Mac's and Wells Fargo's motion for summary judgment.

**I.    BACKGROUND**

This matter arises from a nonjudicial foreclosure sale on real property located at 1125 Tule Drive, Reno, Nevada, 89521, ("the property"), conducted under Nevada Revised Statute ("NRS") § 116.3116 *et. seq.* ECF Nos. 108-1[1]; 109-5. Harold and Valerie Welles acquired title to and ownership of the property, and in November 2006, they executed a deed of trust designating Wells Fargo as the lender and beneficiary and United Title of Nevada as Trustee, in the amount of $260,000.00. ECF No. 108-1. The deed of trust was recorded in the Washoe County Recorder's Office on November 15, 2006. *Id.* The property sits in Meadows Homeowners Association ("the HOA") and is therefore subject to HOA assessments. *See* ECF No. 109 at 4. Wells Fargo and Freddie Mac argue the loan was purchased by Freddie Mac in December 2006, which retained Wells Fargo to act as servicer of the loan. ECF Nos. 108 at 5; 108-2 ¶ 5(c).

After the Welles failed to pay HOA assessments that came due, the HOA, through its agent, recorded a Notice of Delinquent Assessment (Lien) against the property on January 12, 2010. ECF Nos. 108-14; 109-2.  On June 29, 2010, the HOA filed a Notice of Default and

---

[1] The court takes judicial notice of the publicly-recorded documents attached and cited in the parties' motions. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (stating matters of public record may be judicially noticed unless the matter is a fact in reasonable dispute)).

2

Election to Sell under Homeowners Association Lien. ECF Nos. 108-15; 109-3. A Notice of Trustee's Sale was then recorded on March 13, 2013. ECF No. 109-4. At the nonjudicial foreclosure sale held on August 15, 2013, LVDG purchased the property for $5,300.00; a Trustee's Deed upon Sale was then recorded on August 30, 2013. ECF Nos. 108-3; 109-5. Wells Fargo and Freddie Mac argue that at no time did the FHFA consent to this foreclosure.[2] ECF No. 108 at 8.

In the same month that the HOA recorded the notice of foreclosure sale, Wells Fargo recorded a certificate from the State of Nevada Foreclosure Mediation Program, which indicated Wells Fargo could proceed with the foreclosure process under the deed of trust. ECF No. 92-9. Wells Fargo then recorded a notice of trustee's sale on the same day the HOA conducted its foreclosure sale. *Compare* ECF No. 92-10 *with* ECF No. 92-8. Roughly one week later, LVDG initiated this matter by filing a complaint in the Second Judicial District Court of Washoe County, Nevada. *See* ECF No. 1. After the state court granted a temporary restraining order that enjoined Wells Fargo from conducting the foreclosure sale in September 2013, the matter was removed to this court. *Id.*; ECF Nos. 92 at 3-4; 98 at 7. After the temporary restraining order expired, Wells Fargo held a trustee's foreclosure sale on November 1, 2013. ECF No. 108-18; 109-6. Freddie Mac placed the winning bid. *Id.*

On November 8, 2013, Wells Fargo recorded a Corporate Assignment of Deed of Trust, which reflected that the Deed of Trust was assigned to Freddie Mac on March 27, 2013. ECF Nos. 108-2 ¶ 5(g); 108-17; 109-7. Also on November 8, 2013, a Trustee's Deed of Sale was recorded which reflects that Freddie Mac purchased the property at the trustee's sale held on November 1, 2013, under the Deed of Trust. ECF Nos. 108-2 ¶ 5(h); 108-18.

---

[2] The court takes judicial notice that the FHFA has a policy not to consent to the extinguishment of the property of the Enterprises, as cited on their web site. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities . . ., and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."); *Statement on HOA Super-Priority Lien Foreclosures*, FEDERAL HOUSING FINANCE AGENCY (April 21, 2015), https://www.fhfa.gov/Media/PublicAffairs/Pages/Statement-on-HOA-Super-Priority-Lien-Foreclosures.aspx.

3

1 | LVDG amended its complaint in July 2016, ultimately asserting six causes of action[3]
2 | and, in part, seeking an order quieting title on the property. ECF No. 63. Wells Fargo and
3 | Freddie Mac filed a counterclaim, also seeking declaratory relief and quiet title to the property.[4]
4 | ECF No. 85. In June of 2016, Wells Fargo moved for summary judgment on the constitutionality
5 | of NRS § 116.3116 *et. seq.* and, therefore, on its declaratory-relief counterclaim brought under
6 | the U.S. Constitution. ECF No. 92. On November 8, 2017, the court granted Wells Fargo's
7 | motion for summary judgment finding the Ninth Circuit's ruling in *Bourne Valley Court Trust v.
8 | Wells Fargo Bank, N.A.*, 832 F.3d 1154, 1158-59 (9th Cir. 2016), was binding on this court. ECF
9 | No. 101. However, in light of the Nevada Supreme Court's ruling in *SFR Invs. Pool 1, LLC v.
10 | Bank of N.Y. Mellon*, 422 P.3d 1248, 1253 (Nev. 2018), and the Ninth Circuit's ruling in *Bank of
11 | America, N.A. v. Arlington West Twilight Homeowners Association*, __ F.3d __ , 2019 WL
12 | 1461317, at *3 (9th Cir. April 3, 2019), the court now reconsiders its prior ruling *sua sponte*.

The instant motion, filed on October 22, 2018, by Freddie Mac and Wells Fargo, moves this court for summary judgment based on the Federal Foreclosure Bar. ECF No. 108. LVDG opposed the motion (ECF No. 109) and Freddie Mac and Wells Fargo replied (ECF No. 112). The court's order as to each issue now follows.

## II. LEGAL STANDARD

**Motion for Summary Judgment Pursuant to Federal Civil Procedure Rule 56**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec.*

---

[3] The six causes of action include: (1) quiet title/declaratory relief; (2) unjust enrichment; (3) slander of title; (4) conversion; (5) equitable relief – wrongful foreclosure; and (6) equitable relief – recission. ECF No. 63.

[4] Wells Fargo and Freddie Mac assert three counterclaims: (1) declaratory relief; (2) quiet title; and (3) declaratory relief under the U.S. Constitution. ECF No. 85.

4

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

### III. DISCUSSION

**A. Upon reconsideration, the court denies Wells Fargo's prior motion for summary judgement because the Nevada Supreme Court held that the notice provision of NRS § 116.3116 *et seq.* is constitutional.**

Previously, Wells Fargo moved this court for summary judgment arguing that NRS 116.3116 *et seq.* violates Due Process, and therefore they were entitled to judgment as a matter of law. First, Wells Fargo argued that the statute's notice provision was facially unconstitutional which rendered the sale invalid. However, based on subsequent precedent, this argument now fails.

The Ninth Circuit had previously held that NRS § 116.3116's "opt-in" notice scheme was unconstitutional because it violated lender's due process rights. *Id.* at 1156. In coming to this holding, the Court determined that NRS § 107.090 should not be read into NRS § 116.31168(1) to cure the due process deficiency. *Id.* at 1159. However, "a State's highest court is the final juridical arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Cal. Teachers Ass'n v. State Bd. Of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001) ("it is solely within the province of the state courts to authoritatively construe state legislation."). Further, the Ninth Circuit has held that it is "required to follow intervening decisions of the [State] Supreme Court that interpret state law in a way that contradicts [its] earlier interpretation of that law." *Bonilla v. Adams*, 423 Fed. Appx. 738, 740 (9th Cir. 2011); *see also Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983) ("our interpretation . . . was only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect."). A prior decision that has been "undercut by higher authority to such an extent that it has been effectively overruled by such higher authority," is no longer binding on the court. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003).

The Nevada Supreme Court's decision in *SFR Invs. Pool 1, LLC v. Bank of N.Y. Mellon* so undercut *Bourne Valley* that the two are irreconcilable. 422 P.3d 1248, 1253 (Nev. 2018) ("*Bank of N.Y. Mellon*"). In its decision, the Nevada Supreme Court specifically declined to follow the Ninth Circuit, instead holding that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090," and that prior to the October 1, 2015 amendment, an HOA was required to "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Bank of N.Y. Mellon*, 422 P.3d at 1253. This holding so undercut *Bourne Valley* that it is no longer controlling authority with respect to section 116.3116's notice provisions in this district. *See Bank of America, N.A. v. Arlington West Twilight Homeowners Association*, __ F.3d __ , 2019 WL 1461317, at *3 (9th Cir. April 3, 2019) ("The bank's due process argument fails because the Nevada Supreme Court later rejected *Bourne Valley*'s interpretation of the Nevada statutory scheme."). Therefore, the

court must now reject Wells Fargo's theory that *Bourne Valley* prevents the HOA's foreclosure sale from extinguishing the deed of trust.[5]

Second, Wells Fargo argued that the statute was unconstitutional because the "form of the notice of default and notice of sale was not calculated to apprise Wells Fargo that its interest in the deed of trust may be impacted by the HOA foreclosure sale." ECF No. 92. In particular, Wells Fargo argued that because the notices are addressed solely to the homeowners, and neither mention the priority of the loans nor indicate that the HOA is foreclosing on a super-priority lien, the statute is unconstitutional as written. These arguments are also unavailing.

To satisfy due process, the notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The information statutorily mandated to be in the notices, "combined with the statutory scheme's priority provision, is reasonably calculated to provide lienholders with notice of the pendency of nonjudicial foreclosure proceedings that may extinguish their security interests." *Nationstar Mortg. LLC. V. Amber Hills II Homeowners Ass'n*, Case No. 2:15-cv-01433-APG-CWH, 2016 WL 1298108, at *7 (D. Nev. Mar. 31, 2016) ("The fact that a notice does not identify a super-priority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests. . . . The notices give lienholders sufficient notice that their security interest may be at risk and they should take steps to inquire and protect themselves. This satisfies due process.").

The court declines to deviate from the precedent and finds the statute was constitutional as written.[6] Therefore, upon reconsideration, the court denies Wells Fargo's prior motion for summary judgment (ECF No. 92).

---

[5] The court declines to discuss returning to the 1991 version of the statute under the Return Doctrine as that argument is moot given the precedent.

[6] The court makes no ruling as to whether the notice provided in this instance met the statutory standards.

7

**B. Because the Agency did not consent to the HOA's foreclosure, the sale did not extinguish Freddie Mac's interest; therefore, LVDG's property interest is subject to the first deed of trust.**

Wells Fargo and Freddie Mac motion this court for summary judgment on their quiet title claim and request the court declare that (1) the federal foreclosure bar, 12 U.S.C. § 4617(j)(3), preempts Nevada's superpriority HOA foreclosure statute; (2) the HOA foreclosure sale did not extinguish the first deed of trust; and (3) their request for quiet title be granted insofar as Residential Land's property interest is subject to Fannie Mae's first deed of trust.

When Freddie Mac was placed into the conservatorship of the FHFA in 2008,[7] the Agency acquired Freddie Mac's "rights, titles, powers, and privileges . . . with respect to [its] assets." *Id.* § 4617(b)(2)(A)(i). Under this provision, "[n]o property of the Agency shall be subject to . . . foreclosure . . . without the consent of the Agency . . . ." *Id.* § 4617(j)(3).

In *Berezovsky v. Moniz*, the Ninth Circuit held in 2017 that the federal foreclosure bar "unequivocally expresses Congress's 'clear and manifest' intent to supersede any contrary law, including state law, that would allow foreclosure of Agency property without its consent." 869 F.3d at 930-31. The Court thus held that the federal foreclosure bar preempts Nevada laws that allow nonjudicial foreclosures to extinguish the Agency's property interest without consent. *Id.* at 931; *see also Federal National Mortgage Association v. Kree, LLC* , Case No. 3:17-cv-00730-LRH-WGC, 2018 WL 2697406, at *3 (D. Nev. June 5, 2018) (slip copy). While the Ninth Circuit's decision is binding on this court, the Nevada Supreme Court has also recently issued a decision that comports with *Berezovsky*. In *Saticoy Bay LLC Series 9641 Christine View v. Federal National Mortgage Association*, the Court held that the federal foreclosure bar implicitly preempts Nevada's nonjudicial foreclosure statutes that allow a foreclosure sale to extinguish the Agency's assets without their consent. 417 P.3d 363 (Nev. 2018). Therefore, the court agrees with the precedent and declares that the federal foreclosure bar preempts Nevada law that allows

---

[7] The court takes judicial notice that Freddie Mac was placed under the Agency's conservatorship in 2008 and remains there today. *See Summit Real Estate Grp., Inc. v. Fed. Home Loan Mortgage Corp.*, Case No. 2:15-cv-00760-KJD-GWF, 2019 WL 918980, at *1 (D. Nev. Feb. 25, 2019) ("[T]he Act created the Federal Housing Agency (FHFA) and vested the agency with authority to place Freddie Mac and Fannie Mae into conservatorship."); *Berezovsky*, 869 F.3d at 926 ("Freddie Mac is under Agency conservatorship, meaning the Agency temporarily owns and controls Freddie Mac's assets.").

a foreclosure on a superpriority lien to extinguish a property interest held by Freddie Mac without the Agency's consent.

LVDG makes several arguments in opposition to Wells Fargo's and Freddie Mac's motion. First, LVDG argues that the federal foreclosure bar should not be applied because Wells Fargo and Freddie Mac have failed to provide sufficient evidence that Freddie Mac owned the first deed of trust at the time of the HOA foreclosure sale.[8] The court does not agree: the type of evidence introduced here supports that Freddie Mac held an interest in the property at the time of the HOA foreclosure sale.

As the Ninth Circuit found in *Berezovsky*, Freddie Mac's database printouts are admissible as business records. *See* 869 F.3d at 932 n.8 (citing *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009)); *Williston Investment Group, LLC v. JP Morgan Chase Bank, NA*, 736 F. App'x 168, 169 (9th Cir. 2018) ("[W]e held that similar evidence was sufficient in *Berezovsky*, 869 F.3d at 926, 932 & n.8."). The database printouts show that the loan's "funding date" was December 12, 2006, some six and a half years prior to the HOA's foreclosure sale, and the "PART. PCT." was 1.00. ECF No. 108-2, Ex. 1. Dean Meyer—Director, Loss Mitigation for Freddie Mac—explained in his declaration that the "funding date" is "the date when Freddie Mac disburses payment to the seller for a Loan Freddie Mac purchased," and "PART. PCT." shows Freddie Mac owned 100 percent of the loan. ECF No. 108-2 ¶5(c), (e). While LVDG argues that "the so-called funding date could just as easily have been the date that another entity funded the loan," (ECF No. 109 at 13), LVDG "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Additionally, the Mortgage Payment History shows, as explained by Meyer, that Wells Fargo, as servicer, reported on a monthly basis, from December 2006 through November 2013, to Freddie Mac, as required for all Freddie Mac owned loans. ECF No. 108-2 ¶ 5(i), Ex. 5. These business records,

---

[8] The precedent cited by LVDG in support of this argument—*My Home Now, LLC v. Bank of America, N.A.*, Case No. 2:14-cv-01957-RFB-CWH, (D. Nev.) and *John R. Kielty v. Federal Home Loan Mortgage Corporation*, Case No. 2:15-CV-00230-RCJ-GWF, 2016 WL 1030054 (D. Nev. March 9, 2016)—is not binding on this court.

read in conjunction with Freddie Mac's employee's declaration, is sufficient evidence to show Freddie Mac owned the loan at the time of the foreclosure sale. *See Elmer v. JPMorgan Chase & Co.*, 707 F. App'x 426, 428 (9th Cir. 2017) ("Because Elmer did not come forward with specific facts showing that there is a genuine issue for trial, summary judgment was proper." (internal quotations and citations omitted)).

Next, LVDG argues that the foreclosure bar should not apply because Wells Fargo only, as the recorded beneficiary of the first deed of trust, held a property interest, whereas Freddie Mac did not hold an enforceable property interest. This argument too fails.

> Nevada law requires recording of a lien for it to be enforceable, but [it] does not mandate that the recorded instrument identify the note owner by name. If the named beneficiary under the recorded deed of trust is someone other than the note owner, the recordation separates 'the note and the security deed [and] creates a question of what entity would have authority to foreclose, but does not render either instrument void.'

*Berezovsky*, 869 F.3d at 932 (quoting *Edelstein v. Bank of N.Y. Mellon*, 286 P.3d 249, 259 (Nev. 2012) (internal citation omitted)). Following the Restatement Third of Property, "where the note is 'split' from the deed of trust—an 'agency relationship' with the recorded beneficiary preserves the note owner's power to enforce its interest under the security instrument, because the note owner can direct the beneficiary to foreclose on its behalf." *Id.* Therefore, "a note owner remains a secured creditor with a property interest in the collateral even if the recorded deed of trust names only the owner's agent." *Id.*

Here, the recorded deed of trust does not list Freddie Mac as owner, but only Wells Fargo as the lender and beneficiary. See ECF No. 108-1. However, the excerpts from the Single-Family Seller/Servicer Guide ("Guide"),[9] defines the agency relationship between Freddie Mac and Wells Fargo. See ECF Nos. 108-5 and 108-6.[10] Following *Berezovsky*, the court finds that Wells

---

[9] The court takes judicial note of the Guide pursuant to Federal Rules of Evidence 201 (b), (d). *See Berezovsky*, 869 F.3d at 932 n.2.

[10] The Ninth Circuit cited these portions of the Guide to support a ruling that the Bank and Freddie Mac had the requisite agency relationship as defined in *In re Montierth*, 354 P.3d 648 (Nev. 2015). *See Berezovsky*, 869 F.3d at 933.

Fargo was an agent for Freddie Mac with respect to the Welles's loan; therefore, Freddie Mac has a valid and enforceable property interest. *See Berezovsky*, 869 F.3d at 933.

Next, LVDG argues that the Freddie Mac's property interest is unenforceable because under Nevada law, Freddie Mac was required to record its interest. LVDG cites to NRS § 106.210, which they argue requires "[a]ny assignment of the beneficial interest under a deed of trust *must* be recorded . . ." (emphasis added). However, the Nevada Supreme Court's recent rulings on this issue are instructive. *See OneWest Bank FSB v. Holm Int'l Props., LLC*, 432 P.3d 741, 2018 WL 6817052 (Nev. Dec. 20, 2018) (unpublished); *SFR Invs. Pool 1, LLC v. Green Tree Servicing, LLC*, 432 P.3d 718, 2018 WL 6721370 (Nev. Dec. 17, 2018) (unpublished). In *OneWest*, the Court determined that because Fannie Mae purchased the loan before the statute was amended in 2011, the prior version of NRS § 106.210 applied. *OneWest*, 2018 WL 6817052, at *1. As the Court provided, the earlier version of the statute stated, "'any assignment of the beneficial interest under a deed of trust *may be recorded*,' and does not prevent an assignee from enforcing its interest if it chose not to record the assignment." *Id.* (quoting NRS § 106.210(1) (1965)) (emphasis added by the Court). The Court therefore concluded that "Fannie Mae's failure to record its ownership interest has no bearing on this case." *Id.* Similarly, Freddie Mac purchased the loan in 2006, so the earlier version of the statute will apply and Freddie Mac's failure to record its ownership interest has no bearing on this case.

Next, LVDG argues that Freddie Mac gave consent to the foreclosure through its own governing documents which warned entities servicing its loans that an HOA "lien would result in the subordination of Freddie Mac's interest." However, the Ninth Circuit has made clear that there is no implicit consent to the foreclosure through inaction:

> The Federal Foreclosure Bar does not require the Agency to actively resist foreclosure. *See* 12 U.S.C. § 4617(j)(3) (flatly providing that "[n]o property of the Agency shall be subject to . . . foreclosure, or sale without the consent of the Agency."). Rather the statutory language cloaks Agency property with Congressional protection unless or until the Agency affirmatively relinquishes it.

*Berezovsky*, 869 F.3d at 929. Here, LVDG concedes that the Agency has not affirmatively consented to the foreclosure and therefore, the federal foreclosure bar is applicable.

Finally, LVDG argues that as a bona fide purchaser of the property, the federal foreclosure bar does not apply. However, this District has held that Nevada's bona fide purchaser statute is preempted by the federal foreclosure bar. *See JPMorgan Chase Bank v. GDS Fin. Servs.*, Case No. 2:17-cv-02451-APG-PAL, 2018 WL 2023123, at *3 (D. Nev. May 1, 2018) ("*JPMorgan*"). Under Nevada law, a bona fide purchaser has priority if they have no notice.[11] However, even if LVDG is a bona fide purchaser, "[a]llowing Nevada's law on bona fide purchasers to control in this case would be 'an obstacle to Congress' clear and manifest goal of protecting the Agency's assets in the face of multiple threats, including threats arising from state foreclosure law.'" *Id.* (quoting *Berezovsky*, 869 F.3d at 931.

For these many reasons, the court declares that the HOA foreclosure sale did not extinguish Freddie Mac's property interest and that LVDG's property interest is subject to Freddie Mac's first deed of trust. While Wells Fargo and Freddie Mac further request the court declare LVDG's property interest was extinguished by Wells Fargo's November 2013 foreclosure on the deed of trust, the court declines to do so. Neither party tailored its argument to the effect of the second foreclosure sale, and therefore, the court lacks sufficient evidence or argument regarding the second foreclosure sale and its effect on the parties' interests to the property in light of this ruling.

///

///

///

///

///

///

///

///

///

---

[11] Here, as in *JPMorgan*, there is at least some evidence of record notice: the deed of trust states "Nevada-Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT." *See* ECF No. 108-1; *JPMorgan*, 2018 WL 2023123, at *3 n.1.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that upon reconsideration, Wells Fargo's motion for summary judgment (ECF No. 92) is **DENIED**.

IT IS FURTHER ORDERED that Wells Fargo's and Freddie Mac's motion for summary judgment (ECF No. 108) is **GRANTED in part.** To the extent Wells Fargo and Freddie Mac request this court declare LVDG's property interest was extinguished by Wells Fargo's November 2013 foreclosure, the motion is **DENIED without prejudice.**

IT IS SO ORDERED.

DATED this 22nd day of May, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE